UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TWANDA JOHNSON                                            PLAINTIFF

VS.                                           CIVIL ACTION NO. 3:08cv179-DPJ-JCS

MISSISSIPPI DEPARTMENT OF EDUCATION                      DEFENDANT

**ORDER**

This employment dispute is before the Court on Defendant's motion for summary judgment [39]. Having fully considered the parties' submissions and applicable law, the Court finds that Defendant's motion should be granted in part and denied in part.

I.      Facts/Procedural History

Plaintiff Twanda Johnson brings this suit against the Mississippi Department of Education ("MDE") following the termination of her employment as a teacher at the Mississippi School for the Deaf ("MSD"). It appears from the parties' submissions that Johnson's employment was terminated shortly after she was interviewed in conjunction with an EEOC investigation into the allegedly discriminatory termination of principal Pamela Hervey.[1]

Having exhausted administrative remedies, Plaintiff brought suit in the Circuit Court of Hinds County, Mississippi, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, as well as various state law tort claims. As to the Title VII claim, the Complaint specifically alleges both race-based discrimination and retaliation. *See* Complaint at 1 ("Plaintiff has been subjected to intentional discrimination . . . on the basis of race") *and* ¶ 30

---

[1]The Court could not find the date of the interview in the parties' memoranda. Plaintiff testified that it was "like towards the beginning of July" 2007. Ex. A to Def.'s Mot. at 22-23. Defendant states that the temporal proximity between Plaintiff's participation in the investigation and her termination was "close." See Def.'s Reply at 3. The termination letter was received July 11, 2007, but the mailing date was obscured in the record. Ex. A to Def.'s Mot. at Ex. 12.

("Plaintiff was treated adversely . . . when she was retaliated against by Defendant due to her participation in an EEOC investigation"). Plaintiff specifically cites both 42 U.S.C. §§ 2000e-2(a)(1) and 3(a) in her Complaint, *i.e.*, the anti-discrimination and anti-retaliation provisions of Title VII. *Id.* ¶ 31.

Defendant removed the matter to this Court based on federal question jurisdiction and has moved for summary judgment. Defendant's motion fails, however, to address the race-based discrimination claim under 42 U.S.C. §§ 2000e-2(a)(1). Personal and subject matter jurisdiction exist, and Defendant's motion is now ripe for decision.

II. Analysis

A. Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

Finally, in the employment context, "[i]t is more than well-settled that an employee's subjective belief that [s]he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

B.  Title VII

Defendant seeks summary judgment as to Plaintiff's claim for retaliation. Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In this case, Plaintiff Twanda Johnson claims that Defendant terminated her employment in retaliation for cooperating with the EEOC investigation into the termination of principal Pamela Hervey. Part of that investigation focused on Hervey's decision to hire Johnson and whether Johnson was qualified to teach at the MSD. Because there is no direct

evidence of retaliation, Plaintiff relies on circumstantial evidence under the familiar *McDonnell Douglas Corp. v. Green* burden shifting analysis. 411 U.S. 792 (1973).

A Title VII plaintiff presenting a circumstantial case of retaliation must first present a prima facie case by showing the following: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "The causal link need not rise to the level of 'but for' causation at the prima facie stage." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *see also McCullough v. Houston County Tex.*, 297 F. App'x 282, 288 (5th Cir. 2008) (quoting *Gee*, 289 F.3d at 345). Upon the showing of a prima facie case, "the burden then shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Aryain*, 534 F.3d at 484. Ultimately, plaintiff bears the burden of demonstrating a genuine issue of material fact as to whether "the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

Defendant does not seriously contest the first two elements of the prima facie case, which are clearly supported in the record. Instead, Defendant attacks causation in two ways. First, it claims that there can be no causal link because the decisionmakers lacked knowledge of the protected activity. According to Defendant, "Dr. Pridgen [the initial decisionmaker] was not aware of Pamela Hervey's charge of discrimination [and] Dr. Bounds was not aware of who participated in the investigation. Thus, the argument goes, Johnson has failed to establish a

4

causal link between her participation in the investigation of the Hervey charge and her termination." Def.'s Mem. [40] at 5. Second, Defendant attacks Plaintiff's ultimate burden of proving "but for" causation, stating that she would have been terminated regardless of the protected activity. *Id.*; *see also* Def.'s Reply at 2. The Court concludes that Plaintiff has created a genuine issue of material fact as to these two arguments.

Starting at the prima facie stage, the record evidence does not support the MDE's argument that the decisionmakers were unaware of the protected activity. Defendant premises the argument on the testimony of Drs. Pridgen and Bounds. However, Dr. Pridgen merely stated that she did not know of the EEOC investigation "[a]t the time that [she] became interim superintendent." Ex. B to Def.'s Mot. at 18-19. She never states that she remained unaware of the investigation. Regardless, Plaintiff testified in her deposition and declared in her affidavit that Drs. Pridgen and Burkley attended a meeting with Plaintiff and others to discuss the upcoming EEOC interviews. Ex. A to Def.'s Mot., Johnson Dep. at 24; Ex. B to Pl.'s Resp., Johnson Aff. ¶ 8. As for Dr. Bounds' professed lack of knowledge, he relied on the termination recommendation made by Drs. Burkley and Pridgen. Ex. E to Pl.'s Resp., Bounds Dep. at 48. Accordingly, a genuine issue of material fact exists as to whether the decisionmakers knew of the protected activity. Defendant offers no other apparent arguments against the Plaintiff's prima facie case, and the Court therefore concludes that it has been established.

Defendant's only other basis for seeking summary judgment is that Plaintiff's employment would have been terminated anyway, thereby precluding "but for" causation. *See*

5

*Septimus*, 399 F.3d at 608 (discussing "but for" causation).[2] There appears to be no dispute that Plaintiff held an interim license to teach that would expire June 30, 2007, unless she was making progress toward obtaining the appropriate license. On May 18, 2007, Defendant wrote Plaintiff asking for a written account of her "status in acquiring a standard five-year educator license." *See* Ex. A to Johnson Aff., Ex. B to Pl.'s Resp. [43]. On May 22, 2007, Plaintiff responded in writing that she had accomplished some of the necessary steps, such as "Praxis I and Praxis II" and that she was enrolled at Jackson State University in the Master's of Art in Teaching program. Ex. B to Johnson Aff. Plaintiff also states in her affidavit that she met with Principal Sandra Edwards and Dr. Pridgen to discuss the plan for obtaining licensure. Johnson Aff. ¶ 4. On July 11, 2007, Plaintiff received a letter from Dr. Bounds terminating her employment. The letter stated that pursuant to MDE "policy," an interim license could be renewed "with documentation of participation in the Mississippi Department of Education Professional Development Institute, Teacher Mentoring and Induction ('TMI') program and satisfactory progress toward full certification." Ex. A to Def.'s Mot. at Ex. 12. The letter referenced other requirements, including completion of Praxis I and Praxis II, and indicated that MDE had no official documentation of Plaintiff's satisfactory progress toward fulfilling certification or her participation in TMI. *Id.*

Contrary to Dr. Bounds' letter, Plaintiff stated in her affidavit that MDE policy does not require participation in TMI. Johnson Aff. ¶ 3. Neither party attached any written policy indicating whether participation in TMI was required for renewal, and the competing testimony

---

[2]In proceeding to this argument, the Court assumes that Defendant satisfied its burden of production in presenting a legitimate non-discriminatory explanation for the termination.

leaves a question of fact on this issue. *Reeves*, 530 U.S. at 150 (holding that the court may "not make credibility determinations or weigh the evidence"). In addition, Plaintiff offered testimony from Drs. Pridgen and Bounds confirming that "[t]here are several paths" to fulfill the licensure requirement including course work. Bounds Dep., Ex. E to Pl.'s Resp. at 80- 81; Pridgen Dep., Ex. A to Pl.'s Resp. at 12 ("Each teacher had there own individual path that they could take[, and were allowed to] help in the development of those paths."). Pridgen also testified that other teachers did not have certification but were allowed to continue "only if they . . . had made progress toward fulfilling the requirements of an interim license." Pridgen Dep. at 12.[3]

The Court finds that a genuine issue of material fact exists as to whether the asserted lack of participation in TMI and lack of progress toward licensure mean that MDE would have terminated Plaintiff's employment regardless of her protected activity. The Court further finds that Plaintiff's evidence is sufficient to withstand her burden at the pretext stage of the analysis. *Laxton v. Gap Inc.*, 333 F.3d 572, 585 (5th Cir. 2003) (holding that plaintiff presented jury question regarding proffered non-discriminatory reasons for employment action). Defendant's motion is therefore denied as to Plaintiff's retaliation claim.

      C.      State Law Claims

Plaintiff's Complaint includes state law claims for outrage and for intentional and/or negligent infliction of emotional distress. As Defendant observes, the Mississippi Tort Claims Act ("MTCA") "provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *City of Jackson v. Sutton*, 797 So.2d

---

[3]It is not clear from the record whether the testimony regarding various "paths" to licensure means that participation in TMI is not required to obtain renewal.

977, 981 (Miss. 2001) (citations omitted). Moreover, a governmental entity and its employees, acting within the course and scope of their employment or duties, are not liable for discretionary functions. Mississippi Code § 11-46-9(1)(d) states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

The test for determining whether conduct falls within the exclusion for discretionary functions was recently summarized in *Suddith v. University of Southern Mississippi* as follows:

> In order to determine whether governmental conduct is discretionary, this court employs the public policy function test articulated by the Mississippi Supreme First the court must determine whether the act involved an element of choice or judgment. If it does, the court must decide whether the choice involved social, economic, or political policy. The second prong of the test protects only those discretionary acts or decisions based upon public policy considerations. This limitation is to prevent judicial second-guessing of policy decisions through tort actions. Functions which by nature are policy decisions, whether made at the operational or planning level, are protected.

977 So. 2d 1158, 1179 (Miss. Ct. App. 2007) (internal citations and punctuation omitted).

In *Suddith*, the court affirmed summary judgment holding that the decision to withhold tenure to a professor involved in an inappropriate relationship was a discretionary function because the decisionmakers' " judgment regarding the hiring of a faculty member involved important social and public policy, such as providing the students of Mississippi at this public university with the best faculty members possible." *Id*. The same public policy considerations apply in this case. *See also Shelton v. City of Laurel*, No. 2:06cv111-DCB-MTP, 2007 WL 1141501, at *8 n.8 (S.D. Miss. Apr. 17, 2007) (observing that "the processes of hiring,

supervising, and retaining police officers are discretionary functions which ordinarily insulate municipalities from suit.") (citing *City of Jackson v. Powell*, 917 So. 2d 59, ¶ 52 (Miss. 2005) ("The manner in which a police department supervises, disciplines, and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under § 11-46-9(1)(d).")). Defendant's motion is granted as to Plaintiff's state law claims.

    D.    Miscellaneous Claims

Defendant also moved for summary judgment as to Plaintiff's claims under 42 U.S.C. § 1981 and § 1983 along with all claims for punitive damages. Plaintiff presented no argument or summary judgment evidence in response and appears to have waived the claims. Nonetheless, the Court has considered the record as a whole and finds that Plaintiff may not assert a § 1981 claim against a public employer. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). The § 1983 claim is precluded because MDE is an arm of the state not subject to liability under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Finally, the state is not subject to punitive damages. *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 465-66 (5th Cir. 2001). Defendant's motion is granted as to Plaintiff's claims under §§ 1981 and 1983, and Plaintiff's claim for punitive damages.

III.    Conclusion

The Court has considered all issues raised in the parties' submissions, and those not expressly addressed herein would not change the outcome. Based on the foregoing, Defendant's motion for summary is granted in part and denied in part as set forth herein.

    **SO ORDERED AND ADJUDGED** this the 6th day of January, 2010.

                          s/ *Daniel P. Jordan III*
                          UNITED STATES DISTRICT JUDGE